**ALVA STUDIOS, INC., Plaintiff,**

v.

**Robert WINNINGER, doing business as Wynn's Warehouse, and Austin Productions, Inc., Defendants.**

United States District Court
S. D. New York.

Oct. 16, 1959.

Paskus, Gordon & Hyman, New York City, for plaintiff.

Jacob S. Linett, New York City, for defendants.

RYAN, Chief Judge.

Plaintiff in this suit for copyright infringement moves for an injunction pendente lite.

Plaintiff is a New York corporation and has its studios and offices in New York City. It reproduces three-dimensional works of art, the originals of which are owned by various museums throughout the United States and several foreign countries. Plaintiff is authorized by these museums to reproduce these works of art and pays royalties to them for this privilege. Plaintiff works in collaboration with the museum which owns the particular work being reproduced, and the curatorial staff of each such museum exercises close control over the quality and detail of a scaled reproduction of its sculpture works.

Defendant Winninger sells decorative accessories under the trade name of Wynn's Warehouse. Defendant Austin Productions is a New York corporation, engaged in the business of manufacturing and selling decorative accessories.

The plaintiff alleges of its works in its complaint that:

"These reproductions are made through the use of special techniques, skills and judgment developed by plaintiff and are hand finished to duplicate as closely as possible the exact shape, patina, color and texture of the original."

The complaint further alleges that:

"Prior to December 12, 1958 plaintiff caused to be created by its officers and employees a reproduction of a certain three-dimensional work of art approximately 18½ inches in height, which it designated 'Hand of God'."

The plaintiff's product is not an exact replica, however, in that the original work has been reduced in size by the plaintiff. Describing the originality of the work in suit, plaintiff avers that

"Rodin's 'Hand of God' is one of the most intricate pieces of sculpture ever created. Innumerable planes, lines and geometric patterns are all interdependent in this multi-dimensional work. In reduction they all have to be carried over with supreme exactness into smaller scale."

It is in the successful accomplishment of this reduction in size that plaintiff claims, with apparent support, that the originality and validity of the copyright of his work rests. It takes "an extremely skilled sculptor" many hours working directly in front of the original. If there is a small discrepancy in any part of the work of this reduction, the "overall appearance would be altered."

A certificate of registration of copyright claim in a reproduction of Auguste Rodin's sculpture, "The Hand of God", issued to the plaintiff on April 17, 1959. The "replica"—plaintiff's copyrighted work—is unquestionably based upon the Rodin sculpture in bronze, which is owned by the Department of Fine Arts of the Carnegie Institute.

Plaintiff claims that defendant Austin infringed plaintiff's copyright by copying its work and marketing products embodying this copying through the retail

operations of defendant Winninger. Defendant Austin, however, claims that the piece it marketed was its own original interpretation and representation of the Rodin sculpture which is currently on exhibit at the Metropolitan Museum of Art in New York City.

It is undisputed that the Metropolitan and Carnegie sculptures were in the public domain for some time prior to plaintiff's copyright. Rodin's "Hand of God" was first placed on public exhibit at the New Gallery in London, England, in 1905. The sculptor died on November 17, 1917.

■■ It is hornbook that a new and original plan or combination of existing materials in the public domain is sufficiently original to come within the copyright protection (Allegrini v. De Angelis, D.C., 59 F.Supp. 248, at page 250). However, to be entitled to copyright, the work must be original in the sense that the author has created it by his own skill, labor and judgment without directly copying or evasively imitating the work of another (Hoffman v. Le Traunik, D.C., 209 F. 375). The plaintiff has the burden of establishing these elements when demanding the preliminary injunction (ibid. at page 379).

■ Plaintiff has sustained this burden. Its copyrighted work embodies and resulted from its skill and originality in producing an accurate scale reproduction of the original. In a work of sculpture, this reduction requires far more than an abridgement of a written classic; great skill and originality is called for when one seeks to produce a scale reduction of a great work with exactitude.

It is undisputed that the original sculpture owned by the Carnegie Institue is 37 inches and that plaintiff's copyrighted work is 18½ inches.

The originality and distinction between the plaintiff's work and the original also lies in the treatment of the rear side of the base. The rear side of the original base is open; that of the plaintiff's work is closed. We find that this difference when coupled with the skilled scaled sculpture is itself creative.

Alfred Wolkenberg, president of the plaintiff corporation, states in his supporting affidavit that:

"The quality of its reproductions are constantly subject to the approval of the curatorial staffs of the museum of the person which owns the original work. Plaintiff alone is granted access to these original works and to make reductions directly from them in spite of their value and on many occasions, their delicacy, because of its reputation, skill, care and unique secret processes which do no harm to such original works."

We find that the granting of approval by the Carnegie Institute's Department of Fine Arts, experts in the field, to be extremely persuasive that the plaintiff's copyrighted work is in itself a work of art which bears the stamp of originality and of skill.

Plaintiff has established that it has a valid copyright in its work.

We have then to determine whether the evidence of infringement is sufficient to support the granting of injunctive relief.

■ The test as to infringement of copyright is not the test of mere likeness, but the work claimed to constitute the infringement must be a copy, more or less servile, of the copyrighted work, and not an original treatment of a subject open alike to treatment by the copyright holder and others (Pellegrini v. Allegrini, D.C., 2 F.2d 610, at page 612).

■ Where the principal elements of design of plaintiff's copyrighted work and of defendant's allegedly infringing article are taken, as a common source, from an object in the public domain, mere resemblance will not justify a finding of infringement (Allegrini v. De Angelis, supra). Publication of identical works cannot be enjoined if it is the result of independent research (Aero Sales Co. v. Columbia Steel Co., D.C., 119 F.Supp. 693).

One work does not violate the copyright in another simply because there is a similarity between the two, if the similarity between the two results from the fact that both deal with the same subject or have the same source (Affiliated Enterprises, Inc. v. Gruber, 1 Cir., 86 F.2d 958, at page 961; Dorsey v. Old Surety Life Ins. Co., 10 Cir., 98 F.2d 872, 119 A.L.R. 1250).

Since both the Carnegie and Metropolitan works are in the public domain (and defendant Austin claims that its piece is based upon the latter), any mere copying from the Carnegie work is not violative of plaintiff's copyright.

The privilege given to plaintiff by its agreement with Carnegie was the complete access to the original and the use of the name of the Institute.

Plaintiff alleges in paragraph 16 of its complaint that:

"* * * defendants have made and sold their aforesaid infringing copies of plaintiff's said copyrighted work of art with the intent and purpose of passing off their said copies as and for plaintiff's authorized reproduction, and said passing off has occurred and will continue to occur unless enjoined by this Court."

However, the defendants have been advertising their marketed article as produced from the work on display at the Metropolitan, thereby incurring the disfavor of that institution.

To the underside of the pedestal of its sculpture, the plaintiff has affixed a gold label bearing the following legend:

"Authentic copyrighted reproduction made from the original at the Carnegie Institute
Department of Fine Arts—Detroit, Mich.
By Alva Studios, Inc. New York."

There is no allegation that the defendants have employed such a label. In fact, the specimen of the defendant's article, which was submitted by the plaintiff for our examination, bears no label or authentication of any sort. It is evident that the defendant has not trespassed on the right the plaintiff enjoys to the exclusion of the defendant by the use of the name of the Carnegie Institute.

But, the availability to a defendant of other "common sources" is not a defense to an action for copyright infringement if the defendant actually copied the plaintiff's work (Caldwell-Clements, Inc. v. Cowan Publishing Corp., D.C., 130 F.Supp. 326). Here there is convincing credible evidence to establish actual copying.

We have carefully examined the exhibits presented in this motion and the photographs of the original Rodin sculptures. We are persuaded by this examination and by the affidavit of Hugo Robus, sculptor, submitted by the plaintiff that the defendant's product is a copy of plaintiff's work and that its copyright has been infringed. We are also persuaded that plaintiff's work was copied by sandpapering and smoothing down many of the surfaces of plaintiff's work, slicing off approximately 2 inches at the bottom of the base to reduce it to a 16 inch height, and then etching in several features which had been rendered indistinct because of the sanding and smoothing; exactly as plaintiff alleges.

Defendant's, Austin Productions, Inc., unverified financial statement, as of June 30, 1959, affords no assurance that it will be financially able to respond in damages in the event of plaintiff's probable success in this suit. We have no evidence of the defendant Winninger's worth. We find that unless relief is granted plaintiff until final judgment, it will sustain irreparable harm and damage.

We conclude that plaintiff is entitled to the injunctive relief now sought; let an order so providing be settled on 5 days' notice.