No. 70–263.  LEE ET AL. *v.* RUNGE.

MR. JUSTICE DOUGLAS, dissenting.

Petitioner Lee infringed respondent's copyright and a verdict was rendered against her.  Petitioner argued that because the congressional power over copyrights and patents stemmed from the same constitutional provision, they both should be governed by the same standard.  Thus, petitioner contended that the copyright was invalid because the book in question lacked "novelty," but the Court of Appeals rejected this argument saying that the appropriate standard for a copyright was "originality" and that the respondent's book met this criterion.[1]  The standard of copyrightability presents an important question concerning the scope of Congress' enumerated powers.  It has not heretofore been decided by this Court[2] and, arguably, it was wrongly decided by the courts below.

---

[1] *Runge* v. *Lee*, 441 F. 2d 579, 581 (CA9 1971):

"The standard of 'novelty' urged by appellants is applicable to patents, but not copyrights.  The copyright standard is one of 'originality':

" 'The requirements for the "originality" necessary to support a copyright are modest.  The author must have created the work by his own skill, labor and judgment, contributing something "recognizably his own" to prior treatments of the same subject.  However, neither great novelty nor superior artistic quality is required.' "  Quoting *Doran* v. *Sunset House Dist. Corp.*, 197 F. Supp. 940, 944 (SD Cal. 1961), aff'd, 304 F. 2d 251 (CA9 1962).

[2] *Mazer* v. *Stein*, 347 U. S. 201, dealt only with the statutory standards for copyrightability because the constitutional questions were not raised until oral argument.  Respondent's reliance upon *Mazer* as an expression of the constitutional standards for copyrights is therefore misplaced.  Those cases in which we have considered the constitutional ramifications of the copyright power have not dealt with the standard of copyrightability.  *E. g.*, *Bleistein* v. *Donaldson Lithographing Co.*, 188 U. S. 239; *Burrow-Giles Lithographic Co.* v. *Sarony*, 111 U. S. 53.  See also Note, 68 Harv. L. Rev. 517 (1955).

In 1961, respondent published and copyrighted a book entitled Face Lifting by Exercise. This book explained how isometric facial exercises could be used to preserve the appearance of youth. It was based on respondent's study of anatomy, physical therapy, and magazine and newspaper articles, but there is nothing in the record to indicate that the ideas it contained constituted anything more than "selecting the last piece to put into the last opening in a jig-saw puzzle." *Sinclair & Carroll Co.* v. *Interchemical Corp.*, 325 U. S. 327, 335. It was merely a repetition of the existing state of the art. During 1962, petitioner was employed in respondent's beauty salon and we may assume that it was during this time that petitioner first read respondent's book and learned of respondent's facial exercises. In 1965, petitioner published The Joyce Lee Method of Scientific Facial Exercises. It contained a system of facial exercises strikingly similar to respondent's and, even though it was unquestionably expressed in petitioner's own language, we may safely conclude that it was based on respondent's book. An action for copyright infringement was made out, therefore, if the respondent's copyright was valid and if it embraced the ideas in her book.

The constitutional power over copyrights is found in the same clause that governs the issuance of patents: "The Congress shall have Power . . . To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." Art. I, § 8, cl. 8. Many of the same interests underlie both grants of power. The Federalist No. 43. While this Court has not had many occasions to consider the constitutional parameters of copyright power, we have indicated that the introductory clause, "To promote the Progress of Science and useful Arts," acts as a limit on Congress'

power to grant monopolies through patents.  In *Graham*
v. *John Deere Co.*, 383 U. S. 1, 5–6, we said:

> "The clause is both a grant of power and a limita-
> tion.  This qualified authority, unlike the power
> often exercised in the sixteenth and seventeenth
> centuries by the English Crown, is limited to the
> promotion of advances in the 'useful arts.'  It was
> written against the backdrop of the practices—even-
> tually curtailed by the Statute of Monopolies—of the
> Crown in granting monopolies to court favorites in
> goods or businesses which had long before been
> enjoyed by the public.  The Congress in the exer-
> cise of the patent power may not overreach the
> restraints imposed by the stated constitutional pur-
> pose.  Nor may it enlarge the patent monopoly
> without regard to the innovation, advancement or
> social benefit gained thereby.  Moreover, Congress
> may not authorize the issuance of patents whose
> effects are to remove existent knowledge from the
> public domain, or to restrict free access to materials
> already available.  Innovation, advancement, and
> things which add to the sum of the useful knowledge
> are inherent requisites in a patent system which by
> constitutional command must 'promote the Progress
> of . . . useful Arts.'  This is the *standard* expressed
> in the Constitution and it may not be ignored.
> And it is in this light that patent validity 're-
> quires reference to a standard written into the Con-
> stitution.' "  (Citations omitted.)

In *Mazer* v. *Stein*, 347 U. S. 201, 219, we indicated
that the copyright power is also governed by this same
introductory phrase: "The economic philosophy behind
the clause empowering Congress to grant patents and
copyrights is the conviction that encouragement of in-
dividual effort by personal gain is the best way to ad-
vance public welfare through the talents of authors and

inventors in 'Science and useful Arts.' " See also *Bleistein* v. *Donaldson Lithographing Co.,* 188 U. S. 239, 249. In other contexts, we have also shown that patents and copyrights stand on the same footing. *E. g., United States* v. *Paramount Pictures,* 334 U. S. 131, 158; *Sheldon* v. *Metro-Goldwyn Pictures Corp.,* 309 U. S. 390, 401. No reason can be offered why we should depart from the plain import of this grant of congressional power and apply more lenient constitutional standards to copyrights than to patents.[3]  Indeed, for reasons which will later be considered, a copyright may have to meet greater constitutional standards for validity than a patent. The limitations set forth in *Graham* v. *John Deere Co.,* therefore, apply with at least equal force to copyrights. Cf. *Burrow-Giles Lithographic Co.* v. *Sarony,* 111 U. S. 53, 59.

An author's "Writing" or an inventor's "Discovery" can, in the constitutional sense, only extend to that which is his own. It may not be broadened to include matters within the public domain. The congressional power to grant monopolies for "Writings and Discoveries" is likewise limited to that which accomplishes the stated purpose of promoting "the Progress of Science and useful Arts." No distinction is made in the constitutional language between copyrights and patents and I would not create one by judicial gloss. Where, as here, a writer has published a book which compiles and applies infor-

---

[3] Statutory support for the distinction made by the courts below is, at best, flimsy. It is true that the standards of "novelty," 35 U. S. C. § 102, and "non-obviousness," 35 U. S. C. § 103, are embodied in the patent statutes. "Originality," however, is not set forth in the copyright laws as a sufficient measure of copyrightability and it owes its development solely to the courts. *E. g., Du Puy* v. *Post Telegram Co.,* 210 F. 883 (CA3 1914); *Edward Thompson Co.* v. *American Law Book Co.,* 122 F. 922 (CA2 1903). A longstanding, but erroneous, pattern of statutory interpretation may not be spared from the force of a constitutional mandate by reason of its longevity. *Erie R. Co.* v. *Tompkins,* 304 U. S. 64.

mation available to all men, should that writer have a monopoly on the ideas in that book through a copyright issued merely because the words used were the author's own?

Patents which did not serve the broad goals of furthering scientific advancement and bettering the lot of mankind (*Great Atlantic & Pacific Tea Co.* v. *Supermarket Equipment Corp.*, 340 U. S. 147, 154–155 (DOUGLAS, J., concurring)) have been held invalid because they lacked utility, did no more than combine existing inventions, were obvious to someone schooled in the art, or sought to monopolize ideas within the public domain. *Graham* v. *John Deere Co., supra; Great Atlantic & Pacific Tea Co.* v. *Supermarket Equipment Corp., supra; Hotchkiss* v. *Greenwood*, 11 How. 248. It is not obvious that respondent's system of facial exercises was patentable under these standards. It arguably amounted to nothing more than an application of existing knowledge based upon sources available to all men. We have repeatedly held that patents so devoid of novelty were invalid. To create a monopoly under the copyright power which would not be available under the patent power would be to betray the common birthright of all men at the altar of hollow formalisms.

The application of the constitutional standard of "novelty" will not "invalidate the copyright in a substantial portion of all literary works, where novelty as distinguished from originality is a very rare commodity," as one commentator has suggested.[4] If Johann Spies'

---

[4] M. Nimmer on Copyright 33 n. 7a (1971). Professor Nimmer seems to have retreated somewhat from this view, however. Nimmer, Does Copyright Abridge the First Amendment Guarantees of Free Speech and Press?, 17 U. C. L. A. L. Rev. 1180 (1970). Even if it were assumed that the application of the "novelty" standard curtailed the monopoly afforded by the copyright, it has recently been demonstrated that this would not seriously affect the publishing

Historia von Dr. Johann Fausten, Christopher Marlowe's The Tragical History of Dr. Faustus, Goethe's Faust and all the other countless operatic, symphonic, dramatic, and literary versions of the Faustian legend were published for the first time today, copyright protection could well be extended to all. "[A] copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea—not the idea itself." *Mazer* v. *Stein, supra,* at 217. The manner in which the words or musical notes are combined to recount the Faustian legend could well satisfy the constitutional requirement of novelty even though the broad ideas they describe may be part of the public domain. This question is not before us in the present case, however, because the manner of expression used by petitioner was unquestionably her own and it was only the ideas of respondent that were used.[5]

Serious First Amendment questions would be raised if Congress' power over copyrights were construed to include the power to grant monopolies over certain ideas. See Nimmer, Does Copyright Abridge the First Amendment Guarantees of Free Speech and Press?, 17 U. C. L. A. L. Rev. 1180 (1970). The framers of the Bill of Rights added the guarantees of freedom of speech and of the press because they did not feel them to be sufficiently protected by the original Constitution. This liberty is necessary if we are to have free, open, and lively debate of political and social ideas. The "public

---

industry nor would it disserve the interests underlying the copyright power. Breyer, The Uneasy Case for Copyright: A Study of Copyright in Books, Photocopies, and Computer Programs, 84 Harv. L. Rev. 281 (1970).

[5] I recognize that if copyright protection prevented only literal copying, the clever plagiarist could avoid its sanctions by changing irrelevant words. Protecting the manner of expression, however, cannot be allowed to become the tail that wags the dog.

interest in having the fullest information available on the murder of President Kennedy," for example, led one court to conclude that photographs of the assassination were not entitled to the full range of copyright protection. *Time, Inc.* v. *Bernard Geis Associates,* 293 F. Supp. 130, 146 (SDNY 1968). The arena of public debate would be quiet, indeed, if a politician could copyright his speeches or a philosopher his treatises and thus obtain a monopoly on the ideas they contained. We should not construe the copyright laws to conflict so patently with the values that the First Amendment was designed to protect.

Application of the novelty standard does not require that a person whose literary work is used by another be left without a remedy. We deal here only with the extent of Congress' enumerated constitutional powers. Quite different questions would be raised by actions for unfair competition or conversion of a common-law property interest. *International News Service* v. *Associated Press,* 248 U. S. 215. Similarly, different questions would be involved had Congress acted pursuant to other enumerated powers. Cf. *Missouri* v. *Holland,* 252 U. S. 416. The respondent's rights are limited to that which is necessary to "promote the Progress of Science and useful Arts." This requires a level of "novelty" which respondent arguably has not satisfied.

I would grant certiorari and set the case for argument.