**EARTH FLAG LTD., a New York Corporation, Plaintiff,**

v.

**ALAMO FLAG COMPANY, Ebay, Inc., Mrcr Enterprises, Inc., Robert B. Goodspeed, Worldflags, Sharif Kesbeh, Robert P. Knerr d/b/a Walliphant, and John Does 5 through 10, Defendants.**

No. 00 CIV 3961 SAS.

United States District Court,
S.D. New York.

July 17, 2001.

Joseph O. Sullivan, Joseph O. Sullivan & Associates, Westwood, NJ, for Earth Flag Ltd.

H. Nicholas Goodman, Quirk & Bakalor, P.C., New York City, for Defendant Alamo Flag Co.

Harvey Shapiro, Sargoy Stein Rosen & Shapiro, New York City, for eBay.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

On May 24, 2000, plaintiff Earth Flag Ltd. ("EFL") filed suit against defendants Alamo Flag Company ("Alamo") and eBay, Inc. ("eBay") alleging copyright infringement of EFL's flag bearing a public domain photograph of Earth taken from outer space ("Earth Flag"). Specifically, EFL alleged that Alamo was selling flags that infringed on EFL's copyright in the Earth Flag at its retail stores, and eBay was permitting sellers to place similarly infringing flags on its website. *See* Amended Complaint ¶¶ 2–3. On May 17, 2001, this Court issued an Opinion and Order granting defendants' motion for summary judgment. *See Earth Flag Ltd. v. Alamo Flag Co.*, 153 F.Supp.2d 349, 357 (S.D.N.Y.2001) ("*Opinion*"). That decision held that EFL's flag was not sufficiently original to warrant copyright protection.

*See id.* 135 F.Supp.2d at 354. Specifically, this Court found that EFL's Earth Flag had "no non-trivial, original component that entitle[d] it to copyright protection. . . ." *Id.* The Court further found, as a separate and distinct basis for granting Alamo summary judgment, that Alamo's flag was not substantially similar to EFL's Earth Flag because the similarities between the two flags concerned only non-copyrightable elements of the Earth Flag. *See id.* 153 F.Supp.2d at 357. Having thus prevailed on the merits, defendants now move for an award of attorneys' fees pursuant to 17 U.S.C. § 505 and Federal Rule of Civil Procedure 54(d). For the reasons stated below, defendants' motion for an award of attorneys' fees is granted.

## I. BACKGROUND

The relevant facts are set forth in detail in the Opinion, familiarity with which is assumed.

## II. DISCUSSION

### A. Legal Standard

■ The Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. § 505, provides in relevant part that in any copyright infringement action, the court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." The Supreme Court has held that attorney's fees should be equally available to prevailing plaintiffs and prevailing defendants. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Attorney's fees should be awarded to the prevailing party, not "as a matter of course," but "only as a matter of the court's discretion." *Id.* at 533–34, 114 S.Ct. 1023.

■ In *Fogerty*, the Supreme Court highlighted a list of non-exclusive factors to guide the district court's exercise of discretion in awarding fees, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 533 n. 19, 114 S.Ct. 1023 (quoting *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 156 (3d Cir.1986)). However, "such factors may be used only 'so long as [they] are faithful to the purposes of the Copyright Act.'" *Matthew Bender & Co., Inc., v. West Publ'g Co.,* 240 F.3d 116, 120–21 (2d Cir.2001) (quoting *Fogerty,* 510 U.S. at 534, 114 S.Ct. 1023). The primary objective of the Copyright Act is to "encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty,* 510 U.S. at 524, 114 S.Ct. 1023. This objective is promoted by discouraging infringement as well as by the successful defense of copyright infringement actions. *See id.* at 526, 114 S.Ct. 1023.

■ The Second Circuit has held that, of the factors enumerated by the Supreme Court, "objective unreasonableness" should be accorded "substantial weight." *Matthew Bender,* 240 F.3d 116, 120–21. Several courts in this Circuit have awarded attorneys' fees to prevailing defendants solely upon a showing that the plaintiff's position was objectively unreasonable, even without a showing of bad faith or frivolousness. *See Adsani v. Miller,* No. 94 Civ. 9131, 1996 WL 531858, at *13 (1996) (collecting cases holding that objective unreasonableness is sufficient to support a fee award); *Littel v. Twentieth Century Fox Film Corp.,* No. 89 Civ. 8526, 1996 WL 18819, at *3–4 (S.D.N.Y. Jan. 18, 1996) (awarding prevailing defendants attorney's fees based on objective unreason-

ableness of plaintiffs' claims); *Screenlife Establishment v. Tower Video, Inc.,* 868 F.Supp. 47, 52 (S.D.N.Y.1994) (same). However, the mere fact that a defendant obtains summary judgment does not necessarily mean that the plaintiff's position was frivolous or objectively unreasonable. *See Littel,* 1996 WL 18819, at *3. "To hold otherwise would establish a per se entitlement to attorney's fees whenever [a summary judgment motion is] resolved against a copyright plaintiff." *CK Company v. Burger King Corp.,* No. 92 Civ. 1488, 1995 WL 29488, at *1 (S.D.N.Y. Jan. 26, 1995).

■ The emphasis on objective unreasonableness is firmly rooted in the admonition that an award of attorneys' fees must comport with the purposes of the Copyright Act. "As such, the imposition of a fee award against a . . . [party] with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Matthew Bender,* 240 F.3d 116, 2001 WL 50857, at *5. Indeed, a court should not award attorneys' fees where the case is novel or close because· such a litigation clarifies the boundaries of copyright law. *See Lotus Dev. Corp. v. Borland Int'l, Inc.,* 140 F.3d 70, 75 (1st Cir.1998) ("When close infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries. But because novel cases require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff, who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim."); *see also Fogerty,* 510 U.S. at 527, 114 S.Ct. 1023 ("Because copyright law ultimately serves the purposes of enriching the general public through access to creative works, it is peculiarly important

that the boundaries of copyright law be demarcated as clearly as possible.").

### 1. Objective Unreasonableness

 Here, the question of whether EFL's claims against defendants were objectively unreasonable is not a close one. In a suit for copyright infringement, a plaintiff must establish that: (1) it owns a valid copyright in an original work; and (2) the defendants copied original constituent elements of the work. See *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 674, 679 (2d Cir.1998), *cert. denied sub nom West Publ'g Co. v. HyperLaw, Inc.*, 526 U.S. 1154, 119 S.Ct. 2039, 143 L.Ed.2d 1048 (1999). A plaintiff may prove the second element circumstantially by showing that: (1) the defendants had access to the copyrighted work; and (2) that the allegedly infringing material is "substantially similar" to copyrightable elements of plaintiff's work. *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir.1992).

 No amount of copying will constitute infringement where a defendant copies only the trivial or non-original contributions of a plaintiff's work. *See Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 909 (2d Cir.1980). This is consistent with the broader understanding that "[t]he *sine qua non* of copyright is originality." *Feist Publications*, 499 U.S. at 345, 111 S.Ct. 1282. While the standard of originality is low, it is well established that a work must possess more than a *de minimus*

amount of creativity. *See id.* at 345, 362, 111 S.Ct. 1282.

 As to the first element of a successful copyright infringement suit, EFL was objectively unreasonable in its position that the Earth Flag was sufficiently original to warrant copyright protection. As stated in the *Opinion*, the Earth Flag "is nothing more than a public domain photograph transferred from the medium of paper to the medium of fabric." *Opinion* 153 F.Supp.2d at 354. Such reproduction in a new medium, adding only mechanical skill and de minimus artistic vision, was squarely rejected as protectable by the Second Circuit. *See L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 491 (2d Cir.1976) (rejecting a similar claim that reproducing a plastic version of a cast iron "Uncle Sam" toy coin bank in the public domain is sufficiently original to support a copyright). Indeed, Professor Nimmer suggests that a contrary rule would lead to "the ludicrous result that the first person to execute a public domain work of art in a different medium thereafter obtains a monopoly on such work in such medium, at least as to those persons aware of the first such effort." M. Nimmer, *The Law of Copyright* § 20.2, at 94 (1975). Even if pursued in subjective good faith, the notion that EFL could maintain copyright protection for its Earth Flag was unreasonable by any standard. EFL's Earth Flag lacks even the modicum of originality and creativity necessary for copyright protection.[1]

In an attempt to overcome the glaring lack of originality in the Earth Flag, EFL argued that "sweat of the brow" should be

---

1. EFL suggests that the issuance of a registration certificate for its Earth Flag by the Copyright Office belies the unreasonableness of litigating the infringement of that certificate. *See* Earth Flag Limited's Memorandum of Law in Opposition to the Attorneys' Fees Motion of eBay at 7. However, a certificate of copyright registration creates only a rebuttable presumption that the work is copyrightable. *See Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir.1997). Accepting EFL's argument would mean that every action by a plaintiff with a registration is objectively reasonable.

a factor in considering originality, an argument that was squarely rejected by the Supreme Court in *Feist*.[2] *See Feist*, 499 U.S. at 359–60, 111 S.Ct. 1282 (holding that Congress's 1976 revisions to the Copyright Act left "no doubt that originality, not 'sweat of the brow,' is the touchstone of copyright protection...."). EFL failed to demonstrate any original elements of the Earth Flag and sought to use "sweat of the brow" as the only factor warranting copyright protection. *See Opinion* 153 F.Supp.2d at 354. EFL's reliance on a doctrine that was clearly rejected by the Supreme Court was objectively unreasonable.

Because EFL's position regarding the first element of its case against Alamo and eBay was objectively unreasonable, a discussion of the remaining elements of a successful copyright infringement claim is unnecessary. However, to emphasize the unreasonableness of EFL's claim against Alamo, the issue of substantial similarity between Alamo's flag and any protectable elements of the Earth Flag was not, as EFL argues, a close or complex question. *See* EFL's Memorandum of Law in Opposition to the Attorneys' Fees Motion of Alamo at 6. *First*, the photograph of the Earth is in the public domain, and therefore, is an unprotectable element of the Earth Flag. *See L. Batlin & Son*, 536 F.2d at 490. *Second*, the dark blue color of the flag is unprotectable. *See Opinion* 153 F.Supp.2d at 354. *Finally*, the similarities of idea and function between the two flags are unprotectable in that there are only a limited number of ways to convey the idea of a flag with a photograph of the Earth from space and whose background resembles space's dark void. *See id.* at 357. By necessity, any such flag will resemble

EFL's Earth Flag. *See Queenie, Ltd. v. Sears, Roebuck & Co.*, 124 F.Supp.2d 178, 181 (S.D.N.Y.2000) ("[S]imilarity in expression is non-infringing when the nature of the creation makes such similarity necessary."). In short, it was not difficult to conclude that the similarities between Alamo's flag and the Earth Flag concerned only non-copyrightable elements of the Earth Flag. *See Opinion* 153 F.Supp.2d at 357.

This case presented a straightforward copyright infringement claim that was objectively unreasonable. This case did not involve complicated issues of law and fact, and an award of attorneys' fees in such a case would beneficially deter, rather than excessively chill, future lawsuits. *See Proctor & Gamble, Co. v. Colgate–Palmolive Co.*, No. 96 Civ. 9123, 1999 WL 504909, at *4 (S.D.N.Y. July 15, 1999). Failing to award attorneys' fees to defendants in such situations would invite others to bring similarly unreasonable actions without fear of any consequences. Under the circumstances of this case, and "to advance considerations of compensation and deterrence," defendants must be compensated for being forced to defend against such a baseless action. *Fogerty*, 510 U.S. at 533 n. 19, 114 S.Ct. 1023.

### B. Amount of Attorneys' Fees

Having determined that attorneys' fees for defendants are warranted in this case, it is now necessary to consider the amount of such an award. Under the Copyright Act, 17 U.S.C. § 505, the Court must determine a "reasonable" award. The starting point of the attorney's fee calculation is the "lodestar" method, under which fees are determined by multiplying the number of hours reasonably expended

---

**2.** The rationale behind the "sweat of the brow" doctrine "was that copyright was a reward for the hard work that went into compiling facts." *See Feist*, 499 U.S. at 352, 111 S.Ct. 1282.

on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Cohen v. Haven Bd. of Police Comm'rs,* 638 F.2d 496, 505 (2d Cir.1980). The fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. In addition to the amount of work, the award should reflect the skill of the attorneys and the results achieved. *See N.A.S. Import, Corp. v. Chenson Enterprises, Inc.,* 968 F.2d 250, 254 (2d Cir.1992).

### 1. Alamo's Attorney's Fees

In his affidavit, Alamo's counsel, Nicholas Goodman, swore that he billed his time at $175 per hour and that the associate time was billed at $150 per hour. *See* H. Nicholas Goodman's 6/8/01 Affidavit in Support ("Goodman Aff.") ¶ 3. These rates are reasonable, given the background and skill exhibited by Mr. Goodman. Mr. Goodman also swore that he billed a total of 105.1 hours, and his associate billed 115.1 hours. *See id.* ¶ 4. These hours are reasonable with respect to the amount of work required to achieve the favorable re-

sult in this case. At the attorneys' respective hourly rates, the "lodestar" amount for Alamo is $35,657.50. Alamo also requests an additional $904.42 for disbursements incurred, including the charge for EFL's deposition transcript, copying, postage and overnight mail, bringing the total fee amount to $36,561.92. *See id.*

### 2. eBay's Attorney's Fees

In his affidavit, eBay's counsel, Harvey Shapiro, swore that he billed his time at $225 per hour and that the associate time was billed at $175 per hour. *See* 6/4/01 Affidavit of Harvey Shapiro ("Shapiro Aff.") ¶ 2. These rates are also reasonable, given counsel's background and skill. Shapiro billed a total of 311.7 hours, and his associate billed 10 hours. *See* Invoices for Professional Service, Ex. A to Shapiro Aff. These hours are reasonable and commensurate with the amount of work that was required to achieve the favorable result in this case.[3] At these rates and hours, eBay's "lodestar" amount is $71,882.50.[4] However, because eBay has moved for $69,565.00, eBay will be awarded that amount. *See* Shapiro Aff. ¶¶ 2, 4.

eBay also requests fees for two in-house attorneys, Mr. Monahan and Mr. Richter, in the amount of $22,500 for 100 hours at a rate of $225 per hour. *See* Shapiro Aff. ¶ 3. Although the work of in-house counsel may be included in the award of attorney's fees, I decline to do so

---

**3.** While 311.7 hours is unusually high for a case that had little merit, it was reasonable here because eBay's Memorandum of Law in Support of its Motion for Summary Judgment addressed novel questions of law concerning the Digital Millenium Copyright Act, 17 U.S.C. § 512(c), and the Communications Decency Act of 1996, 47 U.S.C. § 230, both questions of first impression in this Circuit. *See Opinion* 153 F.Supp.2d at 357.

**4.** Mr. Shapiro's affidavit shows that eBay requests $69,565.00 in attorney's fees. Howev-

er, eBay's invoices contain many errors. *See* Invoice for Professional Services Rendered 1/1/01 through 1/31/01, Ex. A to Shapiro Aff., at 12 (wrongly calculating 83.30 hours at a billable rate of $225 as $18,675, instead of $18,742.50); *see also* Invoice for Professional Services Rendered 2/1/01 through 2/28/01, Ex. A to Shapiro Aff., at 15 (incorrectly using 117.7 hours instead of 127.7 hours). The correctly calculated lodestar amount is $71,882.50.

here. *See Broadcast Music, Inc. v. R Bar of Manhattan, Inc.,* 919 F.Supp. 656, 661 (S.D.N.Y.1996). Not only did eBay fail to present an itemized list of the work done by either of these attorneys,[5] an additional 100 hours above the 311.7 hours spent by eBay's counsel would be excessive.

## III. CONCLUSION

For the reasons stated above, defendants' motion for attorney's fees is granted. EFL is ordered to pay Alamo's attorney's fees in the amount of $36,561.92. EFL is also ordered to pay eBay's attorney's fees in the amount of $69,565.00.

SO ORDERED:

---

**5.** Mr. Monahan's affidavit "estimate[s]" that he spent "at least" 25 hours on the case and that Mr. Richter spent "at least" 75 hours. No other documentation of work and time spent was provided. *See* 6/01/01 Affidavit of Jay Monahan ¶ 7.