**SHERRY MANUFACTURING COMPA-
NY, INC., Plaintiff-Appellee,
Cross-Appellant,**

v.

**TOWEL KING OF FLORIDA, INC., a
Florida Corporation, Defendant-
Appellant, Cross-Appellee**

No. 83–5810.

United States Court of Appeals,
Eleventh Circuit.

Feb. 27, 1985.

Eugene F. Malin, Malin & Haley, Fort Lauderdale, Fla., for defendant-appellant, cross-appellee.

Carlton H. Hoel, Miami, Fla., Jack E. Dominik, Miami Lakes, Fla., for plaintiff-appellee, cross-appellant.

Before TJOFLAT and FAY, Circuit Judges, and ALLGOOD *, District Judge.

FAY, Circuit Judge:

Sherry Manufacturing Company ("Sherry") brought suit in federal district court against Towel King of Florida ("Towel King") alleging copyright infringement and unfair competition. Sherry's complaint essentially alleged that Towel King copied and distributed a beach towel bearing one of Sherry's copyrighted designs. The trial court agreed and judgment was entered in favor of Sherry and against Towel King for $87,920.20. While we accept without hesitation the majority of the trial court's findings of fact and conclusions of law, we do not find that Sherry's derivative work, as a matter of law, was copyrightable. When compared to the public domain design, it simply lacks sufficient originality to justify copyright protection. We therefore reverse.

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

## FACTS

Sherry and Towel King are both incorporated in the state of Florida and are competitors in the souvenir beach towel industry. The subject matter of this lawsuit relates to a beach towel having a silk screen printed decorative scene depicting three palm trees reaching upward out of the sand, an ocean view above the sand with a sailboat in the right hand corner, and clouds above the ocean horizon. The evidence is uncontroverted that Sherry first marketed such a towel ("Sherry's Original Design") in the early 1960's. Sherry's Original Design was not copyrighted, and Sherry's founder and Chief Operations Officer, Quentin Sandler, testified that more than one competitor copied this design for use on their own products. (T. at 195).

In 1975, Sherry decided that it would be in its best interest to obtain copyright protection for its various designs. Juliana Bramucci, Sherry's artist, was assigned the task of redesigning Sherry's Original Design. This alteration process, which involved for the most part subtle changes in the dimensions of the beach, trees and water, was completed in September of 1976. A towel printed with the "New Design" along with the appropriate application to register a copyright was thereafter submitted to the United States Copyright Office and given Registration No. K 120614.

Shortly after copyrighting their New Design, Sherry noticed what has been termed by the parties a "watermark defect" in the artwork. This error is simply a patch of blue where the trunk of the middle tree should be, giving the illusion that one is looking through the trunk at the ocean.[1] Ms. Bramucci testified that she corrected this error immediately after it was brought to her attention. Sherry thereafter printed and marketed beach towels featuring the corrected version of the New Design. ("Corrected New Design").

In 1981, Sherry learned that one of its competitors, Towel King, was selling a beach towel which appeared to be identical to Sherry's New Design.[2] In fact, Towel King's product even included the telltale watermark defect. On August 4, 1981, Sherry filed this copyright infringement action against Towel King.

SHERRY'S ORIGINAL DESIGN

New Design were virtually identical except for the following:

a) On the defendant's towel, the name "Florida" appears over the top of the scene in different format.

b) One cloud to the left-hand side of the palm trees has been dropped off.

c) The sand below the palm trees has been reduced in defendant's towel.

(R.Vol. 12 at 1876).

---

1. This court is puzzled as to why so much emphasis is put on the watermark defect when in fact a much more obvious error exists with regard to the last palm tree on the right of the design. As one follows the tree's trunk downward, it disappears into the vegetation, yet where it should reappear, there is nothing but blue ocean. Thus it appears that the palm tree begins in mid air somewhere behind the cluster of vegetation.

2. In his Findings of Fact, the trial judge noted that Towel King's accused towel and Sherry's

SHERRY'S NEW DESIGN

SHERRY'S CORRECTED NEW DESIGN

WATERMARK DEFECT

TOWEL KING'S DESIGN

## COURSE OF PROCEEDINGS

Sherry's complaint essentially alleged copyright infringement and unfair competition. Defendant Towel King denied the allegations contained in Sherry's complaint and counterclaimed on the basis of illegally obtained copyright and unfair competition. A bench trial commenced in federal district court on July 18, 1983. At the conclusion of the trial, the district court entered a judgment in favor of Sherry and against Towel King for $87,970.20. In addition, Towel King was enjoined for the life of Sherry's copyright from marketing any products bearing the copyrighted design, and the relief sought by Towel King in its counterclaim was denied.[3]

## COPYRIGHTABILITY

The main issue raised by appellant Towel King is whether Sherry sustained its burden of proving copyrightability of its New Design. The trial court found that the variations in Sherry's New Design were original and substantial enough to be copyrightable. We disagree.

▮ It is well settled that in order to qualify for a separate copyright, the derivative work must contain some substantial, and not merely trivial, originality. *Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 34 (2d Cir.1982); *L. Batlin & Son v. Snyder,* 536 F.2d 486, 490 (2d Cir.) (en banc), *cert. denied,* 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976); *Chamberlin v. Uris Sales Corp.,* 150 F.2d 512, 513 (2d Cir.1945); *see* 1 M. Nimmer, Nimmer on Copyright § 3.03, at 3–10 (1984). Admittedly, the difference between what constitutes sufficient originality and what

amounts to a trivial, insubstantial variation, is a fine line indeed. Nevertheless, that line has to be drawn somewhere, and in doing so, we must be mindful of the importance of the concept of originality to the overall copyright scheme:

Since under the Constitution only an "author" is entitled to copyright protection, the meaning of the term is obviously of major importance. The Supreme Court, in *Burrow-Giles Lithographic Co. v. Sarony* [111 U.S. 53, 58, 4 S.Ct. 279, 28 L.Ed. 349 (1884)], defined an "author" in a Constitutional sense to be " 'He to whom anything owes its origin; originator, maker.' " Thus, the one indispensable element of authorship is originality. One who has slavishly or mechanically copied from others may not claim to be an author.

1 M. Nimmer, *supra,* § 1.06[A], at 1–37.

▮ A side by side comparison of Sherry's Original Design with the New Design convinces this court that the contributions made by Sherry's artist are simply too trivial and too insubstantial to justify copyright protection. We are of course aware of the variations in the two designs as set forth in the trial court's Finding of Facts.[4] Our conclusion, however, is influenced by the obvious fact that the majority of those distinguishing details are so minor that they are virtually unnoticeable upon a cursory comparison of the two towels. Those variations which do eventually rise to the forefront of attention do so only because

---

**3.** The trial court disposed of Towel King's counterclaim by holding that Sherry's failure to mention the Old Design in its application to register its copyright was neither intentional nor purposeful concealment. Moreover, the trial court held that this omission did not render the copyright invalid. Towel King did not challenge that finding on appeal.

**4.** In his Findings of Fact, the trial judge noted that Sherry's New Design differed from Sherry's Original Design as follows:

a) The extent of the seawater portion of the scene is painted differently.

b) The amount of sand beneath the tree was increased to change the impression from an island to a beach.

c) The leaves of the palm tree are sharper and more lifelike.

d) The clouds on the new design were painted differently.

e) The effect of the wind in the overall impression is diminished.

[There was no subsection f) in the Findings of Fact]

g) The water was lowered approximately three inches. On [Sherry's Original Design] some of the palm leaves touched the water. In [Sherry's New Design] they are two inches away.

h) The leaves of the palm tree are different. The right small palm leaves are totally spread from the center palm tree trunk.

(R.Vol. 12 at 1875–1876).

they entail simple, but more obvious, changes in the spacing and dimensions of non-detailed features such as the sand and ocean. In our opinion, it would be contrary to the underlying purpose of copyright law to allow Sherry's New Design, with its insubstantial alterations, to reap the benefits normally afforded to works with more recognizable originality.[5] This is especially true in cases such as this one where the primary purpose of making the changes was to make the work copyrightable, and not to make it more aesthetically appealing.

■ We therefore conclude that as a matter of law, Sherry's New Design lacks sufficient originality to be copyrightable.[6] Furthermore, we see no need to discuss the other issues raised on appeal since those issues presuppose the existence of a copyrighted work. The judgment of the trial court is hereby reversed, and on remand, judgment should be entered in favor of the defendant.

REVERSED and REMANDED.

---

5. In holding as it did, the district court relied heavily on *Eden Toys,* 697 F.2d 27, also known as the *Paddington Bear Case.* That case is factually similar to ours in that it involved a derivative sketch seeking independent copyright protection. The Second Circuit applied the derivative work test for originality and found that the derivative sketch contained sufficient originality to warrant copyright protection.

Unlike our case, however, when the two works in the *Paddington Bear Case* are placed side by side for a cursory comparison, the eye can immediately discern recognizable differences in the two sketches. See *Eden Toys,* 697 F.2d at 31–32.

6. In *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 825 n. 4 (11th Cir.1982), this court concluded that a trial court's findings on issues of similarity in copyright cases were findings of fact subject to the clearly erroneous standard. In cases such as this one, however, where the appellate court has the opportunity to view for itself the same tangible exhibits considered by the trial court, the rationale for applying the clearly erroneous standard disappears. We therefore reverse the trial court on the basis that its finding of sufficient originality was erroneous. *See Eden Toys,* 697 F.2d at 35; 3 M. Nimmer, *supra,* § 12.12, at 1290–94.