**PAST PLUTO PRODUCTIONS CORP., Plaintiff,**

v.

**David A. DANA and Dana International, Defendants.**

**No. 85 Civ. 5400 (PKL).**

United States District Court, S.D. New York.

Feb. 10, 1986.

Mandeville & Schweitzer, New York City, Michael A. Cornman, and Andrew S. Langsam, of counsel, for plaintiff.

Richard E. Bennett, New York City, for defendants.

LEISURE, District Judge:

As the nation prepares to celebrate both the centennial and restoration of the Statue of Liberty, it is hardly surprising that numerous entrepreneurs are seeking to profit from the manufacture and sale of Statue of Liberty memorabilia. Many of these items may be fairly characterized as novelty items, inexpensively made and inexpensively sold. The current dispute arises because one such entrepreneur secured a copyright for the novelty item it had created—a flat foam hat—and now seeks to enjoin another entrepreneur from making and selling its own Statue of Liberty foam hat. This case is before me as an action for injunctive relief and damages for alleged copyright infringement. The Court has subject matter jurisdiction under 28 U.S.C. § 1338(a).

Plaintiff seeks both a preliminary and permanent injunction. During the hearing on plaintiff's application for a preliminary injunction, the parties agreed and the Court ordered that the hearing be consolidated with a trial on the merits, pursuant to Fed.R.Civ.P. 65(a)(2). *See Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 100–02 (2d Cir.1985).

For the reasons set forth below, in findings of fact and conclusions of law made pursuant to Fed.R.Civ.P. 52(a), the Court finds for the defendant and orders the complaint dismissed.

**FINDINGS OF FACT**

1. Plaintiff Past Pluto Productions Corp. ("Past Pluto") is a New York corporation in the business of selling novelty hats shaped to resemble the crown of the Statue of Liberty. Past Pluto is the employer for hire of Elizabeth Tyre ("Tyre"), the designer of the "Crown of Liberty," the hat sold by Past Pluto.

2. Defendant David A. Dana ("Dana") is an individual doing business in the State of New York as the defendant Dana International. In the past, Dana has sold his own line of glassware items through Dana International. At the time of defendants' alleged infringement, however, the business efforts of Dana and Dana International were devoted primarily to the manufacture and sale of Dana's "Liberty Lid," a foam novelty hat shaped to resemble the crown of the Statue of Liberty.

3. Plaintiff's Crown of Liberty is a soft planar sculpture, approximately three-eighths of an inch thick, made of plastic foam. A hole cut in the foam permits the purchaser to wear the Crown of Liberty as a hat. Seven identical, evenly spaced foam spikes radiate from the hat's arcuate perimeter. Under the spikes, the hat is decorated with a silk-screen design—a series of solid window-like silhouettes with the words "STATUE OF LIBERTY 1886–1986" appearing above the windows. A copyright notice, "© 1984 Past Pluto Productions N.Y.C. PAT PEND," is silk-screened on the base of the hat.

4. Plaintiff's Crown of Liberty was inspired by and derived from the crown of the actual Statue of Liberty. As is well known, the Statue of Liberty is a memorial to independence given by France to America. The actual statue, including its pedestal, rises more than 300 feet above New York Harbor. Completed in Paris in 1884 by the sculptor Frederic Auguste Bartholdi,[1] it was unveiled in America in 1886. In 1986, the year of the statue's centennial,

---

**1.** Although Bartholdi is commonly regarded as the Statue of Liberty's creator, the statue was actually built by the collaborative effort of some of the most creative Frenchmen of the late 19th century, including the celebrated engineer Alexandre Gustave Eiffel. *See* George, *The Statue of Liberty* 6 (1985).

public interest in this great monument has been revived, heightened in no small part by a nation-wide fundraising drive devoted to the statue's restoration.

5. The crown of the Statue of Liberty is a three-dimensional, copper-coated, iron framework sculpture. Large vertical windows are disposed in the crown. Above the windows seven spikes, non-uniform in size and shape, radiate from the crown.

6. Plaintiff's mass-produced Crown of Liberty[2] is intended to bear a noticeable, albeit superficial resemblance to the crown of the Statue of Liberty. For example, plaintiff's hat is green, resembling the weathered copper surface of the actual statue. The silk-screen design on plaintiff's hat is a flat pictorial representation of the windows on the crown of the Statue of Liberty. In addition, when worn on the head, the front of the Crown of Liberty flips up, creating an effect somewhat similar to that created by the raised spikes of the Statue of Liberty.

7. On December 31, 1984, plaintiff registered its Crown of Liberty design with the United States Copyright Office and received Registration Number VA–175–451. The copyright registration identified plaintiff's work as a "soft sculpture." On its registration form, however, plaintiff made no mention of the fact that its "soft sculpture" was based on the Statue of Liberty. Specifically, plaintiff did not enter any information on section 6 of the form, which is supposed to be completed if the work being registered is a derivative work.

8. In or prior to June of 1985, plaintiff sold defendant Dana 500 Crowns of Liberty on consignment. Dana sold approximately 150 of those hats, for which he paid plaintiff, and returned the unsold balance.[3] Subsequent to that consignment, Dana entered into negotiations with plaintiff for the purchase of 5,000 of plaintiff's hats for resale. This transaction was never consummated, however, because Dana balked at Tyre's attempt to raise her sales price 2¢ over the figure (70¢ per hat) that she had originally mentioned.

9. Dana responded to the dissolution of his brief business relationship with Tyre by deciding to make his own version of a Statue of Liberty foam hat. Dana then proceeded to draw a rough sketch of the hat he intended to make—a seven-spiked crown with a head size of six inches. At trial, Dana testified under oath that this sketch was based on his own independent research on the Statue of Liberty. Specifically, Dana testified that he had researched his subject in the public library, reading several books on the Statue and some biographical data on the sculptor Bartholdi. Dana also testified that he had studied some post-card photos of the Statue. *See Transcript of July 30, 1985 Hearing* at 16. Although the Court does not question Dana's veracity regarding what he read or studied, any suggestion that Dana's rudimentary sketch was crafted without any reference to his recollection of plaintiff's hat is rejected as not credible.

10. Having finished his sketch, Dana contacted foammakers throughout the New York City area to get price quotes and to see if it was economically feasible to start making and selling foam hats. Dana met with Richard Slone ("Slone"), of Urethane Products, Inc., who was in fact already making Crown of Liberty hats for plaintiff. Subsequently, Dana paid Slone $225 to make a die corresponding to Dana's sketch which could be used for the future production of foam hats. Slone also agreed to supply Dana with urethane foam and make the hats. Eventually, however, Slone told Dana that he would only supply Dana with yellow or gray foam, since he was already making a green hat for plaintiff. Dana refused, telling Slone that his customers would expect and want Dana's hat to be green, the same color as the oxidized copper surface of the actual Statue of Liberty.

11. Taking the die he had bought from Slone, Dana sought foam from other sup-

2. At the time this lawsuit was brought, plaintiff had sold well over 25,000 of its hats.

3. The parties agree that, as a result of his business arrangement with plaintiff, defendant Dana had access to plaintiff's Crown of Liberty, *see infra,* Conclusion of Law ¶ 14.

pliers, eventually reaching an agreement with Barney Weiss ("Weiss") of Durafoam Company. At the suggestion of Weiss, Dana hired M. Daniel Leo ("Leo"), a professional artist and silkscreener, to do the artwork for the crown's design. According to Leo's sworn affidavit, which this Court finds credible in all material respects, he was asked to make a drawing based on the crown of the Statue of Liberty. Leo was told that his artwork would be screened on a novelty foam hat, and was in fact shown a blank cutout of a crown made from Dana's die. At no point was Leo shown Past Pluto's Crown of Liberty. Rather, he based his own artwork on a photocopy from a magazine advertisement which contained an artist's rendering of the Statue of Liberty. Then, using Dana's foam cutout, Leo drew a design not entirely dissimilar to plaintiff's hat, which Leo had never seen. Beneath the spikes, Leo drew dark window-like rectangles in an arced formation, rounding off the tops of the windows to create a domed effect. The windows at either end of the crown were given bulged domes. In general, Leo applied basic techniques of perspective to his drawing; for example, he drew a line above the tops of the windows in order "to show where the parts of the crown begin and to give the illusion of depth to the windows." *Affidavit of Daniel Leo in Opposition to Motion for Preliminary Injunction* ¶ 7 at 2 ("Leo Affidavit").

12. Dana specifically directed Leo to include the word "LIBERTY" and the dates "1886" and "1986," respectively, on the artwork. Leo complied with Dana's request by placing "1886 LIBERTY 1986" in a curved line beneath the windows, surrounded in either side by three stars.

13. Leo's artwork has been adopted by Dana and has appeared on all versions of Dana's Liberty Lid. Dana began selling his Liberty Lids in late June or early July of 1985. Dana has made two versions of the Liberty Lid. The first version, which Dana discontinued after selling about 1200

hats, is circular on the bottom (like plaintiff's hat) and has its seven spikes spread out in a formation that is similar, though not identical, to plaintiff's hat. In contrast, the second version of Dana's has a flattened bottom (apparently to make the hat easier to wear) and its spikes are shifted upward.

14. On July 18, 1985, the U.S. Copyright Office issued a certificate of copyright registration for Dana's Liberty Lid. Dana received Registration Number VA–193–820. In his registration form, Dana described the nature of his work as a "silkscreen soft sculpture." Dana also completed section 6(a) of the form, which asks the author to identify any preexisting works, as follows: "Based on head of Statue of Liberty, sculpted by Auguste Bartholdi, a citizen of France, in 1886."

15. Comparing plaintiff's Crown of Liberty with defendants' Liberty Lid,[4] the Court finds the following similarities:

—Both hats are approximately the same as to height and width. The second version of Dana's hat, however, has shorter spikes, making plaintiff's hat slightly higher and wider than Dana's second version.

—Both hats are constructed from a flat sheet of foam of approximately the same thickness. (The foam used in both hats is similar in texture, although one of Dana's hats that was introduced into evidence was made of softer, spongier foam).

—Both hats have seven foam spikes.

—In both hats, a hole is cut out in the foam to allow the purchaser to wear the item as a hat.

—The front of both hats flip up.

—Both hats are green. (Dana has apparently produced some blue hats and some hats that are blue and green. At least three-fourths of his hats are green, however, and it is clear that, unless he is enjoined, Dana will continue to produce mostly green Liberty Lids).

—There is a silkscreen design on the surface of both hats.

---

4. References to the Liberty Lid are generally references to both versions of Dana's hat, except where a difference between the two versions is expressly noted.

—Both hats include the centennial dates "1886" and "1986" in their respective silkscreen designs.

—Both hats have blackened rectangular windows with rounded tops silkscreened beneath the spikes.

—Both hats have a black arcuate line silkscreened above the windows.

—The spikes on the first version of Dana's hat are splayed in a manner that is nearly, though not exactly, identical to the arrangement of the spikes on plaintiff's hat.

—The bottom of the first version of Dana's hat is rounded, as is the bottom of plaintiff's hat.

16. Comparing plaintiff's Crown of Liberty with defendants' Liberty Lid, the Court finds the following differences:

—Plaintiff's hat has 21 windows. Defendants' hat has 15 windows.

—The tops of plaintiff's windows are evenly rounded. On defendants' hat, the windows on the right and left sides have bulging domes.

—On plaintiff's hat, the phrase "STATUE OF LIBERTY 1886–1986" is placed above the windows, directly below the hat's three uppermost spikes. On defendants' hats, the phrase "1886 LIBERTY 1986," surrounded on either side by three stars, is placed below the windows. There are no stars on plaintiff's hat.

—Past Pluto's window design is surrounded by a silkscreened line, while the line on Dana's design borders only the tops of the windows.

—In the second version of defendants' hat, the spikes are shortened and shifted upward. Thus, when the second version of

defendants' hat is placed on top of plaintiff's hat, the spikes of one hat do not align with the spikes of the other.

—The second version of defendants' hat, unlike plaintiff's hat, has a flat bottom curved slightly inward.

## CONCLUSIONS OF LAW

1. The two elements necessary to a plaintiff's case in an infringement action are: ownership of a copyright by the plaintiff and copying by the defendant. 3 *Nimmer on Copyright* § 13.01 at 13–3 (1985); *see Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985). As a threshold matter, plaintiff must establish the existence and validity of its copyright, since in the absence of copyright even original creations are in the public domain and may be freely copied. *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir.1980) (citations omitted).

2. Where, as here, plaintiff timely obtains a certificate of registration from the U.S. Copyright Office, such certificate "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). A certificate of registration, however, does not create an irrebuttable presumption of copyright validity. *Durham Industries*, 630 F.2d at 908. Rather, the certificate's presence shifts the burden to defendant to disprove validity. *See Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, at 192. Thus, validity should not be assumed where other evidence casts doubt upon the integrity of the copyright. *See Durham Industries*, 630 F.2d at 908.[5]

3. It is fundamental that copyright protection extends only to "original works

---

5. In the case at bar, the presumption of the validity of plaintiff's copyright is specifically endangered by Past Pluto's failure to alert the Copyright Office to the Crown of Liberty's relationship to a prior work, the Statue of Liberty. *See supra*, Finding of Fact ¶ 7. When a copyright claimant fails to advise the Copyright Office of the existence of a prior work in the public domain, the Office is not afforded fair opportunity to pass upon the question of originality in relation to the prior work. *See Knickerbocker Toy Co. v. Winterbrook Corp.*, 554

F.Supp. 1309, 1318 (D.N.H.1982). Furthermore, as this Court has noted on prior occasion, "[t]he knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action ..., or denying enforcement on the ground of unclean hands." *Russ Berrie & Co., Inc. v. Jerry Elsner Co.*, 482 F.Supp. 980, 988 (S.D.N.Y.1980) (citations omitted); *accord Eckes v. Card Prices Update*, 736 F.2d 859, 861–62 (2d Cir.1984).

of authorship." 17 U.S.C. § 102(a); *see* 1 *Nimmer on Copyright* § 2.01 at 2–5 (1985). Although an ordinary mass-produced item may be entitled to copyright protection, such an item, in order to be protected, must nonetheless "be original, that is, the author's tangible expression of his ideas." *Mazer v. Stein,* 347 U.S. 201, 214, 74 S.Ct. 460, 468, 98 L.Ed. 630 (1954); *see L. Batlin & Son, Inc. v. Snyder,* 536 F.2d 486, 492 (2d Cir.) (en banc), *cert. denied,* 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976).

4. Plaintiff's Crown of Liberty, based on a famous statue indisputably in the public domain, is a classic example of a derivative work. *See* 17 U.S.C. § 101. Although derivative works may be copyrighted, *see* 17 U.S.C. § 103(a), the copyright protection extends only to the original contributions of the derivative work's author, *see* 17 U.S.C. § 103(b). The new copyright in no way embraces or protects the underlying, pre-existing work. *See id.*

█ 5. If a court, upon examining a derivative work, cannot discern any original contribution, it follows that the derivative work cannot be the subject of a valid copyright. The Second Circuit has consistently held that derivative works, in order to be copyrightable, must " 'contain some substantial, not merely trivial originality.' " *L. Batlin & Son,* 536 F.2d at 490 (quoting *Chamberlin v. Uris Sales Corp.,* 150 F.2d 512, 513 (2d Cir.1945); *accord Sherry Mfg. Co. v. Towel King of Florida, Inc.,* 753 F.2d 1565, 1568 (11th Cir.1985). *See Durham Industries,* 630 F.2d at 909 ("to support a copyright the original aspects of a derivative work must be more than trivial.").

█ 6. If non-trivial originality can be found in plaintiff's Crown of Liberty, it must be found in the hat's design and not in the hat itself. Elizabeth Tyre may well have been the first person clever enough to think of making flat foam hats based on the Statue of Liberty. But neither Tyre, Past Pluto, nor anyone else can copyright Statue of Liberty foam hats. This is so for

two reasons: First, it is axiomatic that copyright protection is given only to the particular expression of an idea and never to the idea itself. *Mazer v. Stein,* 347 U.S. at 217, 74 S.Ct. at 470. Second, a copyright claimant's production of a work of art in a different medium cannot by itself constitute the originality required for copyright protection. *L. Batlin & Son,* 536 F.2d at 491 (citing Nimmer on Copyright). This rule is justified because no one can claim to have independently evolved any particular medium. *Id.* (citing Nimmer on Copyright); *see Atari, Inc. v. Amusement World, Inc.,* 547 F.Supp. 222, 226 (D.Md.1981).

7. In short, the quantum of originality necessary to establish the copyrightability of plaintiff's hat must be found, if anywhere, in the hat's design. Once this Court's inquiry has been so defined, it also becomes necessary to identify those aspects of the Crown of Liberty's design that are so clearly within the public domain that they cannot reasonably be considered original. First, the seven spikes of plaintiff's crown correspond in number to the seven spikes of the crown of the Statue of Liberty. There is nothing at all original, or copyrightable, about seven spikes on a liberty crown. Plaintiff attempts to lay some claim to originality by pointing out that its spikes are uniform in shape and size, unlike the non-uniform spikes of the Statue of Liberty. This Court declines, however, to find artistic originality in a design feature composed of elemental symmetry and prompted most probably by the promise of convenience in manufacture. *See L. Batlin & Son,* 536 F.2d at 489 (variations found in a derivative work that result from the desire to make the work "as simply as possible for the purposes of manufacture" are only trivial and do not amount to substantial originality). Second, the phrase "Statue of Liberty 1886–1986" is a simple reference to the Statue's centennial adapted from historical data that is beyond peradventure within the public domain. *See Alexander v. Haley,* 460 F.Supp. 40, 45 (S.D.N.Y.1978).[6] Third, there is nothing

6. It could be argued that plaintiff's precise placement of "Statue of Liberty 1886–1986" on its hat (immediately below the spikes and above

the windows) is itself an original feature of the Crown of Liberty. Dana's Liberty Lid, however,

protectible about plaintiff's use of green foam, especially since defendant's own use of green is attributable solely to the fact that his hat is based on a green statue. *See Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 (2d Cir.1982) (manufacturer cannot copyright common characteristics of snowmen). Finally, although it could be argued that plaintiff's disposition of the hole for the purchaser's head is in some sense an original feature of the hat's design, it would probably be more accurate to regard this "purely functional, non-artistic" aspect of plaintiff's hat as beyond the scope of copyright protection. *See Durham Industries*, 630 F.2d at 909 n. 3.[7]

8. Accordingly, Past Pluto's argument that its hat is copyrightable is ultimately reduced to the basic contention that the hat's silhouette window design is sufficiently original to afford plaintiff's hat at least some measure of copyright protection. For the reasons set forth below, however, this Court declines to find that this design or any of the hat's other features amount to substantial non-trivial originality deserving of protection under the federal copyright laws.

9. The Second Circuit has evaluated the originality of derivative works in two well-known decisions. In *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir.) (en banc), *cert. denied*, 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976), the Court upheld the trial court's finding that the differences between appellants' copyrighted plastic Uncle Sam bank and a cast iron Uncle Sam

bank in the public domain[8] were insufficiently original to support a copyright. *See id.* at 492. In so holding, the Court noted that appellants' bank was extremely similar to the cast iron bank, save for differences in size and material. *See id.* at 489. The Court acknowledged certain differences in the prior and derivative work, such as the shape of the bank bag and the leaves in the eagle's talons, but derided such distinctions as "minor." *See id.* The Court then explained why the purpose of the copyright laws would be ill-served by granting protection to appellants' work:

> Absent a genuine difference between the underlying work of art and the copy of it for which protection is sought, the public interest in promoting progress in the arts ... could hardly be served. To extend copyrightability to minuscule variations would simply put a weapon for harassment in the hands of mischievous copiers intent on appropriating and monopolizing public domain work.

*Id.* at 492.

In *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d at 905 (2d Cir.1980), the Court considered the copyrightability of derivative works of a licensee based on the licensor's copyrighted works. Specifically, Tomy Corporation ("Tomy"), a toy manufacturer with a license to market certain copyrighted cartoon characters of Walt Disney Productions, claimed to hold valid copyrights on three wind-up plastic figures (each about three inches tall and capable of locomotion) that were instantly recogniz-

---

places the words "1886 LIBERTY 1986" *below* the windows, just above the hole for the purchaser's head. Thus, Dana's design is different, at least as different as it could be given the obviously limited ways in which one can design a flat foam hat of the Statue of Liberty. *See infra, Conclusions of Law* ¶¶ 11, 14.

7. Under the copyright laws, an article with an "intrinsic utilitarian function," 17 U.S.C. § 101, is not protected except to the extent that its design incorporates artistic features that can be identified separately from the article's functional elements. *See Kieselstein-Cord v. Accessories by Pearl, Inc.*, 632 F.2d 989, 992 (2d Cir.1980). The corollary proposition is that a work of applied art or industrial design which has aesthetic or artistic features that cannot be identified separately from the work's useful elements is

simply beyond the protection of copyright. *See Carol Barnhart, Inc. v. Economy Cover Corp.*, 773 F.2d 411, 418 (2d Cir.1985). Thus, were I to find that plaintiff's hat is a hat and nothing but that, *cf. Kieselstein-Cord, supra*, 632 F.2d at 994 (Weinstein, J., dissenting), plaintiff's action could be dismissed on the basic ground that its work is too utilitarian in nature to deserve copyright protection. Although defendants have raised this point, they have not pressed it; thus it seems inappropriate to decide the instant case on such narrow grounds.

8. The Court noted that Uncle Sam mechanical banks had been a classic piece of Americana since 1886, *see L. Batlin & Sons*, 536 F.2d at 488, coincidentally the same year that the Statue of Liberty commenced her historic residence in New York Harbor.

able as the Disney characters Mickey Mouse, Donald Duck and Pluto Dog. *Id.* at 908. The validity of Tomy's copyright was challenged by another Disney licensee, Durham Industries, Inc. ("Durham"), which had been manufacturing and distributing wind-up toys which Durham conceded were modelled after Tomy's Disney figures. *See id.* Nonetheless, the Court declined to find the Tomy figures sufficiently original to be deserving of copyright protection. *See id.* at 911. Relying on its prior decision in *L. Batlin & Son,* the Court in *Durham Industries* noted that "the mere reproduction of the Disney characters in plastic, even though the adaptation of the preexisting works to this medium undoubtedly involved some degree of manufacturing skill, does not constitute originality as this Court has defined the term." *Id.* at 910.

■ 10. The Second Circuit's decisions in *L. Batlin & Son* and *Durham Industries* strongly support the conclusion that plaintiff's Crown of Liberty hat is not entitled to copyright protection. As I have already noted, the mere transposition of the Statue of Liberty into the infinitely more mundane medium of flat foam does not constitute the originality necessary to sustain a claim of copyright; at best, it is evidence of manufacturing skill, *see Durham Industries,* 630 F.2d at 910. *See also L. Batlin & Son,* 536 F.2d at 491 (requirement of originality must be satisfied by the demonstration of "true artistic skill," rather than the mere demonstration of "physical skill" or "special training").

■ 11. It is also my finding that plaintiff's silhouette window design is only a "minuscule variation," *see Durham Industries,* 630 F.2d at 910; *L. Batlin & Son,* 536 F.2d at 492, demonstrating no more than "trivial" originality, *see id.* at 490. Anyone making a flat foam hat of the Statue of Liberty is bound to include windows in the hat's design. When viewed at a distance, the windows of the Statue of Liberty appear as darkened oblong rectangles with slightly rounded tops. Plaintiff's hat merely mirrors that appearance in a different medium. The sworn affidavit of defendant's artist supports the finding that the application of conventional techniques

such as elementary perspective drawing could easily lead anyone designing a flat foam hat based on the Statue of Liberty to use a dark-window design. *See Leo Affidavit* ¶ 9 at 3. In short, the dark-window design is evidence of mechanical skill rather than artistic skill, and mechanical skill cannot be equated with originality for the purposes of the copyright laws, *see supra,* Conclusion of Law ¶ 10.

12. Accordingly, I find that plaintiff's Crown of Liberty hat lacks sufficient originality to be the subject of a valid copyright. For that reason alone, Past Pluto has failed to establish a prima facie case of infringement, *see Sherry Mfg. Co. v. Towel King,* 753 F.2d at 1569, and its application for injunctive relief must be denied.

■ 13. Although I need go no further in my analysis before dismissing this case, the evidence before me permits me to reach certain conclusions regarding plaintiff's proof of copying. For even if Past Pluto were able to establish ownership of a valid copyright, it would also have to prove actual copying by defendants in order to prevail on its infringement claim. *See Warner Bros. v. American Broadcasting Cos.,* 654 F.2d 204, 207 (2d Cir.1981). In the absence of direct proof, copying may be inferred where a plaintiff establishes that the defendant had access to the copyrighted work and that substantial similarities exist as to protectible material in the two works. *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 48 (2d Cir. 1986).

14. In the instant case, because it is undisputed that Dana had access to plaintiff's Crown of Liberty, proof of copying may be equated with proof of substantial similarity. Under the "ordinary observer" test adopted by the Second Circuit, two works are substantially similar if "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Ideal Toy Corp. v. Fab-Lu Ltd.,* 360 F.2d 1021, 1022 (2d Cir.1966); *accord, e.g., Novelty Textile Mills v. Joan Fabrics Corp.,* 558 F.2d 1090, 1093 (2d Cir.1977). In the context of the current dispute, however, this Court should

consider the "ordinary observer" test in light of the limited modes of expression which are available, as a practical matter, to makers of flat foam hats based on the Statue of Liberty. As Professor Nimmer has noted, "similarity of expression ... which necessarily results from the fact that the common idea is only capable of expression in more or less stereotyped form will *preclude a finding of actual similarity."* 3 *Nimmer on Copyright* § 13.03[A] at 13–32–33 (1985) (emphasis added); *see Durham Industries,* 630 F.2d at 916; *Reyher v. Children's Television Workshop,* 533 F.2d 87, 91 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976).

 15. Thus, any similarities between plaintiff's and defendants' hats are most accurately viewed as inevitable congruences rather than indicia of copying. *Cf. Mattel, Inc. v. Azrak-Hamway Int'l, Inc.,* 724 F.2d 357, 360 (2d Cir.1983) (per curiam). To the extent that an idea and its expression are indistinguishable, a copyright can protect only against identical copying. *Atari, Inc. v. North Am. Philips Consumer Electronics Corp.,* 672 F.2d 607, 616 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). In applying this principle, known as "idea-expression unity," *Atari, Inc., supra,* 672 F.2d at 616, the Ninth Circuit has noted that an idea and its expression are more likely to coincide when an inexpensive manufacturing process is used. *See Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1168 (9th Cir.1977). That observation speaks volumes about the difficulty a novelty foam hat maker such as Past Pluto will have in sustaining a claim for infringement.

 16. In the instant case, plaintiff cannot credibly assert that Dana's hat is an identical copy of Past Pluto's hat. Indeed, there are several identifiable differences in the two hats. *See supra,* Finding of Fact ¶ 16. Although these differences are not of great magnitude, they are nonetheless significant, given the limited variations in design available to plaintiff, *see supra,* Conclusion of Law ¶ 14. In addition, where, as here, plaintiff's work is itself derived from a design in the public domain, the showing of imitation should be stronger, *see Millworth Converting Corp. v. Slifka,* 276 F.2d 443, 445 (2d Cir.1960), and even small variations may protect a subsequent designer from infringement, *see Concord Fabrics, Inc. v. Generation Mills, Inc.,* 328 F.Supp. 1030, 1033 (S.D.N.Y.1971). *See also* Comment, *Copyright Protection for Mass-Produced Commercial Products: A Review of the Developments Following Mazer v. Stein,* 38 U.Chi. L.Rev. 807, 816–17 (1971). Finally, the distinct aspects of Dana's design should not be discounted merely because of speculation that he deliberately altered plaintiff's design just enough to avoid a finding of substantial similarity. To the contrary, the Second Circuit has clearly indicated that such intentional alteration, if it leads to changes in a work sufficient to eliminate any substantial similarity with a prior copyrighted work, is a legitimate means of avoiding infringement. *See Eden Toys, Inc. v. Marshall Field & Co.,* 675 F.2d at 501 (citing Nimmer on Copyright); *Warner Bros. v. American Broadcasting Cos.,* 654 F.2d at 211 (same).

17. Based on the foregoing analysis, *see supra,* Conclusions of Law ¶¶ 13–16, I find that Dana's Liberty Lid cannot be regarded as substantially similar to of Past Pluto's Crown of Liberty. Since there is no substantial similarity, there can be no copying, notwithstanding Dana's admitted access to plaintiff's hat.[9] Of course, even if plaintiff

---

9. Even where both access and substantial similarity are proven, the trial court may still find that copying has not been proven if it believes defendant's evidence of independent creation. *See Novelty Textile Mills v. Joan Fabrics Corp.,* 558 F.2d at 1092 n. 2. Although the affidavit of Dana's artist and silkscreener is credible evidence of independent creation, *see supra,* Finding of Fact ¶ 11, Dana's own testimony regarding his creation of the original sketch for his Liberty Lid is not entirely credible, *see supra,* Finding of Fact ¶ 9. Accordingly, I have not gone so far as to make a finding of independent creation. Of course, such a finding is in no sense necessary, since I have already determined that plaintiff does not own a valid copyright and that defendants did not copy plaintiff's hat.

had presented incontrovertible proof of copying, my prior ruling that Past Pluto does not hold a valid copyright in its Crown of Liberty would preclude plaintiff from prevailing on its claim for infringement. *See Towle Mfg. Co. v. Godinger Silver Art Co., Ltd.,* 612 F.Supp. 986, 992 (S.D.N.Y. 1985).

18. Because plaintiff has failed to prove infringement of a valid copyright, there is no reason for an injunction to issue, and this action must be dismissed. On the surface, this conclusion may appear unjust, if only because some of the evidence in this case creates the inference that Dana may have exploited his brief business relationship with Tyre. If that characterization of Dana's conduct is fair, however, it only means that plaintiff might have asserted a claim based on the common law tort of misappropriation, which generally protects against a defendant's competing use of a valuable product or idea created by the plaintiff through investment of time, effort, money and expertise. *See Standard & Poor's Corp. v. Commodity Exch., Inc.,* 683 F.2d 704, 710 (2d Cir.1982); *Mayer v. Josiah Wedgwood & Sons, Ltd.,* 601 F.Supp. 1523, 1534 (S.D.N.Y.1985). If plaintiff had been able to sustain such a claim, however, it would only have been because of proof that Dana stole Tyre's *idea.*[10] The very nature of such a claim demonstrates why plaintiff's infringement claim is fatally flawed, since copyright law protects only the expression of an idea, never the idea itself. *E.g., Reyher v. Children's Television Workshop,* 533 F.2d at 90 (citing *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954)).

19. The law of copyright is designed in part to reward individual ingenuity, *see id.,* and to serve the public interest in promoting progress in the arts, *see L. Batlin & Son,* 536 F.2d at 492. But these laudable goals are hardly served by extending the protection of copyright to works of insufficient originality, such as Past Pluto's Crown of Liberty. *See id.* Indeed, to extend copyrightability to such works simply places "a weapon for harassment in the hands of [those] intent on appropriating and monopolizing public domain work." *Id; see Gracen v. Bradford Exchange,* 698 F.2d 300, 305 (7th Cir.1983) (if originality is found too easily in derivative works, "it would paradoxically inhibit rather than promote the creation of such works by giving the first creator a considerable power to interfere with the creation of subsequent derivative works from the same underlying work.").

### CONCLUSION

Accordingly, for the reasons stated herein, the Court orders plaintiff's action dismissed on the merits.

**SO ORDERED.**

---

10. Because plaintiff never asserted a claim for misappropriation, it is hardly necessary to decide whether such a claim would have been preempted by federal copyright law. *See generally, Mayer v. Josiah Wedgwood & Sons, Ltd.,* 601 F.Supp. at 1531–36. Nonetheless, it appears that a misappropriation claim by Past Pluto would not have been preempted, insofar as such a claim would have been based on defendants' misappropriation of plaintiff's idea, a subject matter beyond the scope of copyright law. *See* 17 U.S.C. § 102(b). It is clear that any state law action covering subject matter that does not come within the subject matter of federal copyright law as defined in 17 U.S.C. §§ 102 and 103 is not preempted. *See Mayer, supra,* 601 F.Supp. at 1532; 17 U.S.C. § 301(b)(1).