**KATE ASPEN, INC., Plaintiff,**

v.

**FASHIONCRAFT–EXCELLO, INC., Defendant.**

**No. CIV.A. 1:05CV1032BBM.**

United States District Court, N.D. Georgia, Atlanta Division.

April 28, 2005.

---

Alan Shane Nichols, King & Spalding LLP, Courtland Lewis Reichman, King & Spalding, Atlanta, GA, for Kate Aspen, Inc., Plaintiff.

Brian D. Siff, Counsel of Record, Dickstein Shapiro Morin & Oshinsky, New York City, Jerry Byron Blackstock, Hunton & Williams, Atlanta, GA, for Fashion-Craft–Excello, Inc., Defendant.

## ORDER

MARTIN, District Judge.

This matter is before the court on the "Emergency Motion for Temporary Restraining Order and Related Relief" ("Motion for TRO") [Doc. No. 2], filed by plaintiff Kate Aspen, Inc. ("Kate Aspen") in conjunction with its Complaint on April 19, 2005. The court held a hearing on the Motion for TRO on April 22, 2005 (the "April 22 hearing") and entered a verbal Order denying the Motion on that same day. In ruling from the bench, the court advised the parties that it would enter a written Order on the Motion for TRO, and the court further advised the parties that the court reserved the right to change its ruling upon closer consideration of applicable authorities. The court now provides the parties with the written Order it promised at the April 22 hearing, and also addresses the "Motion for Reconsideration" [Doc. No. 5] filed by Kate Aspen on April 26, 2005.

## I. Background [1]

Kate Aspen and the defendant, Fashion-Craft–Excello, Inc. ("FashionCraft") are wholesale retailers of wedding favors, which are small gifts given to guests at weddings. Kate Aspen has sued Fashion-Craft for copyright infringement and unfair competition arising out of Fashion-Craft's alleged "sale of virtually identical copies of Kate Aspen's copyrighted designs." Three Kate Aspen designs in particular are the subject of this action: (1) Kate Aspen's "Wedding Bell Tag,"[2] (2) Kate Aspen's "Wedding Cake Candle," and (3) Kate Aspen's "Rose Ball Candle." It is undisputed that Kate Aspen obtained federal copyright registrations for these designs in late January 2005.

At the April 22 hearing, the court was informed that various other "wedding cake candles" and "rose ball candles" exist in the wedding favors industry. Defendants' Hearing Exhibits 1–3 are examples of two wedding cake candles and one rose ball candle that existed in the wedding favors market prior to 2004. Kate Aspen was founded in October 2004. Kate Aspen does not dispute that such candles were available in the wedding favors market before it created and copyrighted the designs at issue herein. Indeed, Kate Aspen's counsel acknowledged in response to a direct question from the court that wedding cake candles are readily available and common in the wedding favors industry. The court notes that it is also undisputed that Kate Aspen's principals, Brad Fallon ("Fallon") and Jennifer Nichols ("Nichols") had experience working in the wedding

---

1. Because the court has not changed its mind and will not grant Kate Aspen's Motion for TRO; because the court assumes familiarity with the factual background based on the April 22 hearing; and because the court believes that this case may be more properly litigated in the United States District Court for the Southern District of New York ("Southern District of New York"), the court will engage in only a brief discussion of the factual and procedural background of this case.

2. The court notes that at the April 22 hearing, it was revealed that FashionCraft had at one point considered utilizing a thank-you tag similar to Kate Aspen's Wedding Bell Tag, but FashionCraft ultimately abandoned that product. The court denied the Motion for TRO as to Kate Aspen's Wedding Bell Tag on those grounds at the April 22 hearing, and the court stands by its ruling on those grounds. Indeed, Kate Aspen's Motion for Reconsideration does not even discuss Kate Aspen's Wedding Bell Tag and the court will not devote any additional discussion to Kate Aspen's Wedding Bell Tag herein.

favor industry prior to forming Kate Aspen.

In late February 2005, Kate Aspen sent the first of multiple "cease-and-desist" letters demanding that FashionCraft cease its allegedly infringing behavior. Ultimately, on April 7, 2005, FashionCraft filed its own lawsuit against Kate Aspen in the Southern District of New York (the "New York litigation"). In the New York litigation, FashionCraft seeks a declaratory judgment that Kate Aspen's copyrights are invalid and unenforceable. FashionCraft also seeks damages for Kate Aspen's alleged tortious interference with FashionCraft's business relations. Notably, this case—which undisputably arises out of the same factual issues as the New York litigation—was filed by Kate Aspen on April 19, 2005. Kate Aspen is a Georgia company and its primary counsel is located in Atlanta, Georgia. FashionCraft is a New York company and its primary counsel is located in New York, New York.

## II. Discussion

██ Preliminarily, the court notes that a TRO, like a preliminary injunction, is an " 'extraordinary' " remedy that is not to be granted unless the movant clearly establishes the burden of persuasion as to all four elements. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir.2003) (citation omitted). *Even in the copyright context*, a movant is not entitled to a TRO or preliminary injunction unless the movant proves each of the following: (1) a *substantial* likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction does not issue; (3) the so-called "balancing of the equities" tips in favor of the movant, such that the threatened injury to the movant outweighs any

harm that the TRO or injunction might cause the defendant; and (4) granting the injunction will not harm the public interest. *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir.2001) (copyright case).

██ Here, the court denies Kate Aspen's Motion for TRO for two reasons. First, the court finds that Kate Aspen has not shown that it has a "substantial" likelihood of success on the merits. The court acknowledges that Kate Aspen's copyright registrations are *prima facie* evidence of the validity of Kate Aspen's copyrights. However, the court finds that—at least at this stage of the case, and given the "extraordinary" nature of a TRO—FashionCraft has adequately demonstrated in response to Kate Aspen's copyright registrations that Kate Aspen's Wedding Cake Candle and Kate Aspen's Rose Ball Candle lack the requisite originality to qualify for copyright protection.

 Specifically, the court notes that the "*sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original *to the author*." *Feist Publ'ns, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (emphasis added). The court observes that the threshold for copyright originality is not high—the work must possess "some minimal degree of creativity," but "even a slight amount will suffice." *Id.* Here, the court disagrees with Kate Aspen that even this low standard is met, in part because the court disagrees with Kate Aspen that "[t]he undisputed record evidence is that the [Kate Aspen products] were independently created by their authors." To the contrary, the court believes that the undisputed record evidence shows that Nichols and Fallon

were involved in the wedding favor industry prior to founding Kate Aspen, and that the evidence further shows that rose ball candles and wedding cake candles are commonplace in the wedding favor industry and have been for some time. Kate Aspen's counsel conceded as much at the April 22 hearing. In a situation where an allegedly copyrighted work is similar to a pre-existing work to which the author of the new work had access, the author of the new, allegedly copyrighted work must have contributed " 'more than a merely trivial variation, something recognizably his [or her] own.' " *FASA Corp. v. Playmates Toys, Inc.*, 912 F.Supp. 1124, 1147 (N.D.Ill.1996) (citation and internal quotation marks omitted), *rev'd on other grounds*, 108 F.3d 140 (7th Cir.1997); *see also Sherry Mfg. Co. v. Towel King of Fla., Inc.*, 753 F.2d 1565, 1568 (11th Cir.1985).[3] The court, having reviewed the record evidence and keeping in mind the "extraordinary" nature of the remedy currently sought by Kate Aspen, does not believe that Kate Aspen's Wedding Cake Candle and Kate Aspen's Rose Ball Candle demonstrate any originality that is more than "merely trivial." The court finds *Sherry Mfg. Co.* and *FASA Corp.* particularly instructive in this regard. In *Sherry Mfg. Co.*, the Eleventh Circuit found that a new design of a beach scene on a beach towel, based on an old but similar design of a beach scene on a beach towel, was not sufficiently original to qualify for copyright protection. *Sherry Mfg. Co.*, 753 F.2d at 1566, 1569. The court so held despite the fact that the new design incorporated the following changes:

a) The extent of the seawater portion of the scene is painted differently.

b) The amount of sand beneath the tree was increased to change the impression from an island to a beach.

c) The leaves of the palm tree are sharper and more lifelike.

d) The clouds on the new design were painted differently.

e) The effect of the wind in the overall impression is diminished.

---

**3.** For purposes of this Order, the court accepts Kate Aspen's argument that there is no difference in the standard of originality required for a so-called "derivative work" as compared to an original work. However, to the extent that Kate Aspen implicitly argues that *Feist* and *Montgomery v. Noga*, 168 F.3d 1282 (11th Cir.1999) overruled *Sherry Mfg. Co.*, the court disagrees. *Sherry Mfg. Co.* expressly states—as does *FASA Corp.*, cited by Kate Aspen as an example of a case in which a court "upheld copyrights in works that have seemingly minimal originality"—that the standard for creativity is that there must be more than "merely trivial" originality, and the court believes that remains the standard. *Sherry Mfg. Co.*, 753 F.2d at 1568; *see also* 1 Melville B. Nimmer & David Nimmer on Copyright § 3.03[A] ("In general, the applicable standard in determining the necessary *quantum* of originality is that of a 'distinguishable variation' that is more than 'merely trivial.' "). Although the court acknowledges that *Montgomery* appears to back away from the Eleventh Circuit's statement in *Sherry Mfg. Co.* that "some substantial" originality is required in the case of a derivative work, the court also notes that the *Montgomery* court only viewed *Sherry Mfg. Co.* as creating a *"possible* tension ... regarding the test for establishing originality." *Montgomery*, 168 F.3d at 1291 n. 12 (emphasis added). The court thus finds *Sherry Mfg. Co.* is still instructive on the question of what constitutes more than "merely trivial" originality, as discussed in greater detail *infra*. Finally, the court observes that even in the aftermath of *Montgomery*, the Eleventh Circuit has stated "that there is a hierarchy of copyright protection in which original, creative works are afforded greater protection than derivative works or factual compilations." *Suntrust Bank*, 268 F.3d at 1271. Nevertheless, the court will proceed conservatively and only hold Kate Aspen to a standard of originality that is more than "merely trivial."

[There was no subsection f) in the Findings of Fact]

g) The water was lowered approximately three inches. On [the old design] some of the palm leaves touched the water. In [the new design] they are two inches away.

h) The leaves of the palm tree are different. The right small palm leaves are totally spread from the center palm tree trunk.

*Id.* at 1568 n. 4. Here, the evidence shows that Kate Aspen's Rose Ball Candle reflects a slight reduction in overall size and rose petal size from the pre-existing rose ball candle (Defendant's Hearing Exhibit 1). Kate Aspen's Wedding Cake Candle also reflects a slight size reduction from one of the two pre-existing wedding cake candles in evidence (Defendant's Hearing Exhibit 2), as well as a different arrangement of the "pearls" on the cake itself (they are slightly closer together) and a slight alteration to the bow on the top of the cake. Kate Aspen's Wedding Cake Candle also incorporates a ring of roses around its base, but the court notes that the other pre-existing wedding cake candle (Defendant's Hearing Exhibit 3) incorporates a ring of roses around its base (albeit in a slightly different style). In light of the *Sherry Mfg. Co.* holding that the alterations therein did not constitute originality that was more than "merely trivial," the court, at least at this stage, cannot say that Kate Aspen's readily apparent alterations of pre-existing wedding cake candles and rose ball candles—that were in the public domain and easily accessible by Fallon and Nichols as they worked in the wedding favor industry—rise to the minimal level of originality required for copyright protection. *See also FASA Corp.,* 912 F.Supp. at 1148 (finding that one of

plaintiff's robot toys *"does not have the requisite incremental originality to be protected by [plaintiff's] copyright registrations,"* because the plaintiff's "design is substantially similar to *many preexisting works to which its creators had access* "). (emphasis added).

 The court also declines to issue a TRO in this case because of the application of the so-called "first-filed" rule. Generally, when parties have filed competing or parallel litigations in separate federal courts, the court in which the case was first filed should hear the case. This rule applies in the Eleventh Circuit, *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169, 1174 (11th Cir. 1982), as well as the Second Circuit, *see City of New York v. Exxon Corp.,* 932 F.2d 1020, 1025 (2d Cir.1991). Moreover, the first-filed rule generally requires the first court to decide whether the first-filed rule should apply, or whether a narrow exception to the rule that only applies in "compelling circumstances," *Haydu,* 675 F.2d at 1174, favors transfer of the first-filed case to the second court for consolidation. *See, e.g., Exxon Corp.,* 932 F.2d at 1025 (noting that first court has jurisdiction to enjoin second court). Kate Aspen seeks a TRO in this court rather than in the Southern District of New York, where Kate Aspen acknowledges it is subject to jurisdiction. This action by Kate Aspen could circumvent the Southern District of New York's opportunity to make the initial evaluation as to whether the first-filed rule should apply to this case. The court understands that Kate Aspen believes that a narrow exception to the first-filed rule governs this case. Specifically, because Fashion-Craft, on notice of potential legal action against it, filed a declaratory judgment action in its home forum, Kate Aspen believes the first-filed rule does not apply.

However, the court notes that even in instances where the first-filed lawsuit is a declaratory judgment action and an exception to the first-filed rule might thus *conceivably* apply, it is nonetheless *still preferred* that the first-filed rule govern. *See, e.g., Supreme Int'l Corp. v. Anheuser–Busch, Inc.,* 972 F.Supp. 604, 606 (S.D.Fla. 1997). Moreover, the court notes that FashionCraft's New York lawsuit does not merely seek declaratory relief; it also seeks money damages. In short, the court does not believe it likely that an exception to the first-filed rule will ultimately apply to this case, although that question is ultimately for the Southern District of New York to decide. The court is accordingly even more reluctant to issue a TRO, lest the court erroneously signal to the Southern District of New York that the court somehow believes that it should take custody of the New York litigation. The court believes no such thing.[4]

## III. Summary

For the foregoing reasons, Kate Aspen's Motion for TRO [Doc. No. 2] is DENIED. Kate Aspen's Motion for Reconsideration [Doc. No. 5] is also DENIED. This action is STAYED pending the decision of the Southern District of New York as to whether or not the "first-filed" rule should or should not apply to this case and to the related litigation in the Southern District of New York. The Clerk is hereby DIRECTED to administratively terminate

this action pending a decision from the Southern District of New York.

---

4. Indeed, even though the court has denied Kate Aspen's Motion for TRO, the court wishes to advise the parties that in no way should this Order or the court's time spent thereon be interpreted as or considered to be evidence that this court has any vested interest in this case and/or the New York litigation, such that an exception to the first-filing rule might be more likely to apply. To do so

would reward Kate Aspen for seeking a TRO in this court in an instance where a TRO is (at least in this court's opinion) inappropriate. Of course, should the standard first-filed rule analysis nevertheless result in the transfer of the New York litigation to this court, the court will handle the case as it would any other.